## UNITED STATES *v.* THORNTON.

### APPEAL FROM THE COURT OF CLAIMS.

No. 188. Submitted December 20, 1895. — Decided January 6, 1896.

The claimant originally enlisted at Washington in August, 1878, and was discharged at Mare Island, California, November 6, 1886, receiving (under the provisions of Rev. Stat. § 1290, as amended by the act of February 27, 1877,) travel pay and commutation of subsistence from Mare Island to Washington. He did not return to Washington, but November 10, 1886, reënlisted at Mare Island as a private, and in the course of his service was returned to Washington, where, at the expiration of two years and four months, he was discharged at his own request. *Held,* That, as the service was practically a continuous one, and his second discharge occurred at the place of his original enlistment, he was not entitled to his commutation for travel and subsistence to the place of his second enlistment.

The petition in this case set forth that the petitioner enlisted as a private in the marine corps, November 10, 1886, at Mare Island, California, to serve five years, and was discharged March 13, 1889, at Washington D. C., by order of the Secretary of the Navy ; that, under the provisions of Rev. Stat. § 1290, he was entitled to receive transportation and subsistence or travel pay and commutation of subsistence from the place of his discharge to that of his enlistment ; that he made written application for the same to the Treasury Department, and was informed that his claim was adjusted and transmitted

to the Second Comptroller, who declined to allow the case, on the ground that he was discharged at his own request before the expiration of his term of enlistment.

The case having been heard before the Court of Claims, that court upon the evidence found the following facts:

1. The claimant enlisted at the age of 13 years 1 month and 3 days, in the marine corps of the United States, at Washington, D. C., on August 29, 1878, for a term of 7 years 10 months and 27 days, and was then "bound to learn music" in said corps.

April 17, 1880, he was rated as a drummer.

November 6, 1886, he was discharged from the service at Mare Island, California, as a drummer.

November 10, 1886, he reënlisted at Mare Island, California, as a private in said corps for a term of five years.

On March 13, 1889, before the expiration of the last-mentioned term of enlistment, Thornton, as a private in said corps, was, at his own request, and not by way of punishment for an offence, discharged from service at the Marine Barracks, Washington, D. C., by direction of the Secretary of the Navy.

The claimant was settled with in full for all pay and allowances except transportation and subsistence in kind, or, in lieu thereof, travel pay and commutation of subsistence, from Washington, D. C., the place of his discharge, to Mare Island, California, the place where he had reënlisted. And when he was discharged, at the end of his term of enlistment, he received travel pay and commutation of subsistence computed at the rate of one day for every twenty miles of the distance from Mare Island, California, to Washington, D. C.

2. The travel pay and commutation of subsistence of a private in the marine corps when discharged in the third year of his second term of enlistment, and when he is allowed the same, are stated by the proper accounting officers of the Treasury Department to be one day's pay at 60 cents per day, and one ration commuted at 30 cents for each twenty miles of the distance from place of discharge to place of last enlistment; and in the settlement of accounts they adopt 3136 miles as the distance from Washington, D. C., to Mare Island, California.

According to this practice the travel pay and commutation of subsistence on such a discharge would be for —

| | |
|---|---|
| 157 days' pay, at 60 cents | $94 20 |
| 157 rations, at 30 cents | 47 10 |
| Total | $141 30 |

3. Under a long-standing construction by the accounting officers of the Treasury Department of the law embraced in section 1290 of the Revised Statutes, it has been the practice to refuse travel pay and commutation of subsistence to enlisted men from the place of their discharge to the place of enlistment, when they have been discharged at their own request prior to the expiration of their term of enlistment.

The only exception made under this practice is when an enlisted man is discharged at his own request after twenty years of faithful service. (Army Regulations, 1863, par. 163.)

4. Before bringing suit here the claimant presented the claim set forth in his petition to the proper accounting officers of the Treasury Department, and it was disallowed in accordance with the practice mentioned in finding 3.

The court also found as a conclusion of law, that the claimant was entitled to recover of the defendants the sum of one hundred and forty-one dollars and thirty cents ($141.30), for which amount judgment was entered, and the government appealed.

*Mr. Assistant Attorney General Dodge* for appellants.

*Mr. Robert Thornton*, appellee, submitted on the record.

Mr. JUSTICE BROWN delivered the opinion of the court.

By Rev. Stat. § 1290, as amended by the act of February 27, 1877, c. 69, 19 Stat. 240, 244, "when a soldier is discharged from the service, except by way of punishment for an offence, he shall be allowed transportation and subsistence from the place of his discharge to the place of his enlistment, enrolment, or original muster into the service. The Government may furnish the same in kind, but in case it shall not do so, he shall be allowed travel pay and commutation of subsistence, for such time as may be sufficient for him to travel from the place of discharge to the place of his enlistment, en-

rolment, or original muster into the service, computed at the rate of one day for every twenty miles."

The case was disposed of in the court below as one depending solely upon the question whether a soldier, who is discharged from the service by his own consent, shall, under the above section, be allowed the transportation and subsistence therein provided for.

We do not find it necessary to express an opinion upon this question, as there is another point apparently not called to the attention of the Court of Claims, upon which we think the case must be reversed. The transportation provided for is "from the place of his discharge to the place of his enlistment, enrolment or original muster into the service." Claimant was originally enlisted at Washington in August, 1878, and was discharged at Mare Island, California, November 6, 1886, receiving, under the provisions of the above section, travel pay and commutation of subsistence from Mare Island to Washington. He did not return to Washington, however, but on the fourth day thereafter (November 10) reënlisted at Mare Island as a private, and in the course of his service was returned to Washington, where, at the expiration of two years and four months, he was discharged at his own request, and now claims transportation and commutation of subsistence from Washington to Mare Island as the place of his enlistment, amounting to $141.30. The result is that, notwithstanding his original enlistment and final discharge were both at Washington, he receives $282.60 for travel and subsistence twice across the continent without ever having, so far as it appears, expended a dollar or travelled a mile.

These allowances are both of them presumptively for expenses actually incurred, as is evident from the provision that they may be furnished *in kind*, and are designed to reimburse the soldier for all necessary outlays of returning to the place of his enlistment, which is treated as presumptively his home. Indeed, the law of January 11, 1812, c. 14, originally provided, 2 Stat. 671, 674, that the travel and subsistence should be allowed from the place of discharge to the place of residence of the claimant. By Rev. Stat., however, § 1290, Congress sub-

stituted for place of residence the expression "place of enlistment, enrolment or original muster into the service," the purpose of which was, doubtless, to protect the government against the soldier choosing a distant place for his assumed residence and recovering a large mileage, to which he was not justly entitled. The presumption, however, that these allowances are for expenses actually incurred is not absolutely conclusive, and if it be shown that the soldier cannot possibly intend to incur the expense for which the allowance is made, or for some other reason he is not within the spirit of the act, he is not entitled to the allowance. His claim, therefore, should be based upon something more than a mere technicality. If, for example, petitioner's discharge and reënlistment at Mare Island had been cotemporaneous acts, he would clearly not have been entitled to travel and subsistence to Washington; and such we understand to have been the practice of the Department. So, if such discharge and reënlistment were so near together that they constituted, practically, a continuous service, we think the second enlistment may be treated as a reënlistment, and if the soldier be returned to the place of his original enlistment and there discharged, he would not be entitled to an allowance for travel and subsistence.

In the case of *United States* v. *Alger*, 151 U. S. 362; 152 U. S. 384, where an officer resigned one day, and was appointed to a higher grade the next day, it was held that, for the purpose of computing longevity pay, he was to be considered as having been engaged in a continuous service. Bounties to private soldiers, in the form of increased pay after five years' service, are allowed by Rev. Stat. § 1282 and § 1284, to those who reënlist within one month (since extended to three months, act of August 1, 1894, c. 179, § 3, 28 Stat. 215, 216) after having been honorably discharged. This would seem to indicate an intention on the part of Congress to regard a reënlistment within thirty days as practically a continuous service for the purpose of additional pay, though not necessarily so for the purposes of transportation and subsistence.

In this case we are able to take judicial notice of the fact

that claimant could not possibly have travelled from Mare Island to Washington and back, within the four days which elapsed between his discharge and his reënlistment, and hence, if he intended to reënlist, that he received there an allowance to which he was not justly entitled, and, as the second discharge is at the place of his original enlistment, he is not entitled to another mileage across the continent. It will, perhaps, not be just to say of the claimant that the interval which elapsed between his discharge as a drummer and his reënlistment as a private at Mare Island, was for the purpose of drawing transportation and subsistence to Washington, but the case at least suggests that possibility. Nor do we undertake to say that the paymaster was not fully justified in paying the claimant his transportation and subsistence when originally discharged at Mare Island, since it was manifestly impossible for him to know whether the claimant intended to reënlist or not; but under the circumstances we think the service should be treated as a continuous one. Indeed, it is somewhat doubtful whether this is not specially provided for by § 1290, which allows transportation and subsistence from the place of his discharge "to the place of his enlistment, enrolment, or *original muster* into the service." If the word "original" preceded the word "enlistment" this construction would be freer from doubt, but the section as it reads certainly lends support to the theory that the allowances were not intended as a mere bounty.

Whether the claimant should be recharged, after his reënlistment, with the travel and subsistence allowed him on his first discharge raises a question which is not presented by the record in this case, and upon which we do not feel warranted in expressing an opinion. Other considerations may have a bearing upon this question, which do not enter into the present controversy. If, for instance, the claimant did not intend to reënlist when first discharged, but subsequently changed his mind, it does not necessarily follow that he should be recharged these allowances, if the government chose to reenlist him. The question at issue concerns only the propriety of the second claim and not of the first allowance. The case

is a somewhat exceptional one, and all that we decide is that, where the service is practically a continuous one, and the soldier's second discharge occurs at the place of his original enlistment, he is not entitled to his commutation for travel and subsistence to the place of his second enlistment.

· The judgment of the Court of Claims is, therefore,

*Reversed, and the case remanded with directions to dismiss the petition.*